## Richmond

OVERNITE TRANSPORTATION COMPANY v. L. M. WOODFIN,
ET AL., PARTNERS TRADING AS WOODFIN BROTHERS.

January 17, 1955.

Record No. 4302.

Present, Spratley, Buchanan, Miller and Smith, JJ.

The opinion states the case.

*Shewmake, Gary, Goddin & Blackwell,* for the appellant.

*E. Neil Rogers* and *S. W. Shelton,* for the appellees.

BUCHANAN, J., delivered the opinion of the court.

Overnite Transportation Company, complainant, brought this suit in equity to enjoin Woodfin Brothers, a partnership, herein called defendant, from transporting property at a less freight rate than a common carrier was allowed to charge, and from carrying any goods for hire between Richmond and Danville at a rate less than that prescribed in Overnite's tariffs. The defendant filed a demurrer to the bill and also an answer which denied its allegations. The trial court sustained the demurrer on the ground that the complainant had an adequate remedy at law and accordingly dismissed the bill. Error is assigned to that ruling.

The bill alleged (1) That Overnite was a common carrier engaged in transporting property in intrastate commerce under certificates of public convenience and necessity issued by the State Corporation Commission, operating chiefly in southwest Virginia and between Richmond and Danville at rates in accord with tariffs approved by the Commission; (2) That defendant is a contract hauler operating intrastate in Virginia under a permit issued by the Commission and under license issued by the Commissioner of Motor Vehicles; (3) That the defendant is and has been actively soliciting and carrying commodities between Richmond and Danville at a less freight rate than that fixed by the Commission for Overnite for the same commodities in the same territory; and (4) That such action is causing and has caused great and irreparable harm and damage to Overnite and is in violation of the statutes of the Commonwealth.

Overnite's brief states that the statute violated by defendant is § 46-2 of the Code, which provides: "It shall be unlawful for any person, firm or corporation, after receiving a license from the Commissioner [of Motor Vehicles] as herein provided to transport any commodity in any territory at a less freight rate or charge than that fixed by the State Corporation Commission for a common carrier for the same commodity in the same territory."

Overnite, as a common carrier by motor vehicle, must carry commodities for the public generally at rates prescribed by the Commission between any points on its certificated routes. Defendant, as a contract carrier, is not required to haul for the public at large and is prohibited (Code § 56-289) from transporting goods for more than two consignors on the same vehicle at the same time. It does not operate on fixed routes and is not required to have a certificate of public convenience and necessity, but is required to have a permit from the Commission. It hauls goods under special and individual contracts, Code § 56-273(f), and its rates are not subject to regulation by the Commission, Code § 56-276, but are subject to the statutory limitation set forth in § 46-2, *supra.*

The defendant, admitting as it does by the demurrer its violation of § 46-2, nevertheless contends that Overnite is not entitled to injunctive relief because it has an adequate remedy at law. That remedy, defendant asserts, is found in § 46-18 of the Code, which makes a violation of § 46-2 a misdemeanor punishable by fine or imprisonment, or both, as well as in § 56-297 of the Code, which empowers the Commission to fine up to $1,000 a permit holder who has willfully violated or failed to observe any law touching his permit or any of the terms of his permit or any of the Commission's proper orders or regulations; or to suspend, revoke or amend such permit for said causes.

Overnite contends that these statutes provide no adequate remedy, and if they do their enactment did not oust equity of its previously existing jurisdiction.

The question is settled in this jurisdiction by the holding in *Turner v. Hicks,* 164 Va. 612, 180 S. E. 543. Turner held a certificate from the Commission to operate as a common carrier of goods between Danville and Lynchburg. Hicks obtained from the Director (now Commissioner) of Motor Vehicles a license giving him the right to transport property but not to operate on regular schedule or to solicit or receive patronage on routes served by common carriers. Acts 1932, ch. 342, § 35(f), p. 639.

Turner filed a bill in equity alleging that Hicks was operating on a regular schedule and soliciting patronage between Lynchburg and Danville in direct competition with him and in violation of § 33(c) of chapter 342, Acts 1932, page 636; that Hicks had been tried and convicted of violating that section but notwithstanding that fact had persisted in his conduct and if not enjoined would cause Turner irreparable loss and damage. The answer of Hicks admitted that he had no certificate from the Commission, but denied the other material allegations and challenged the jurisdiction of equity to hear the matter.

In an opinion by the present Chief Justice it was said that the question presented was whether such competition was permitted by statute; and it was held that "(U)nder the facts stated, equity has jurisdiction to determine the respective rights of the parties, even though the act complained of may be a violation of the criminal law." 164 Va. at p. 615, 180 S. E. at p. 545. It was further said that as a general rule equity extends its protection not only to actual but to threatened invasion of rights conferred by franchise, and that an injunction is proper whether the invasion seeks to destroy the franchise or merely to participate in its exclusive privileges.

The evidence showed that Hicks was doing the acts alleged in the bill and a permanent injunction was accordingly awarded against him.

That holding was on the principle thus stated in *Long's Baggage Transfer Co.* v. *Burford,* 144 Va. 339, 353, 132 S. E. 355, 359:

"It is true that courts of equity will not restrain an act merely because it is a violation of a criminal statute or of a penal ordinance of a city; yet, where such violation results, as in the instant case, in special damages to property rights, which it would be difficult or impossible to ascertain, equity, in order to prevent a multiplicity of prosecutions, the legal remedy being inadequate, will grant complete relief by injunction."

In the *Long* case an ordinance of Lynchburg provided a method by which a taxicab owner could acquire stands on the city streets and provided penalties for violation of its provisions. Competing taxicab owners took possession of the stands assigned to Long, who filed a bill for injunction, to which the defendants demurred on the ground that the complainant was not entitled to injunctive relief. This court held that the assignment of the taxicab stands gave the complainant a valuable property right which a court of equity would protect, the penalty provided by the ordinance notwithstanding.

In *Mears* v. *Colonial Beach*, 166 Va. 278, 282, 184 S. E. 175, 176, we said:

"It is true that equity will enjoin the violation of a criminal law or a penal statute where the commission of the act will result in special and irreparable injury to property rights. But this is not because of the criminal feature but in spite thereof. The criminality of the act gives no right to the injunction."

*Turner* v. *Hicks, supra,* was decided in 1935 and since that time there have been a number of changes in the statutes relating to motor vehicles and motor vehicle carriers, but the penalties against the owner of a for-hire vehicle in 1935 for competing with a common carrier were in general the same as the penalties provided by the present statutes against the contract carrier for a similar offense; *i. e.,* fine or imprisonment, or both, and revocation of the permit.

Section 46-18 of the 1950 Code which now provides for a fine or imprisonment, or both, for violation of § 46-2 was in chapter 342 of the 1932 Acts as § 118 thereof, page 670.

Section 33(c) of the 1932 Act dealt with in *Turner* v. *Hicks, supra,* is now § 46-58 of the 1950 Code and provided that the owner of a vehicle licensed by the Director (now Commissioner) of Motor Vehicles (which included a for-hire vehicle) who operated in unlawful competition with a common carrier should be fined from $50 to $250, each day's operation constituting a separate offense, and in

addition, the license of such convicted person "shall" be revoked by the Director.

Chapter 129 of Acts 1936 (which repealed chapter 359 of the 1932 Acts and as amended is now in Title 56, chapter 12 of the 1950 Code) designated and defined the contract carrier, § 56-273(f), and required him to have a permit from the Commission, § 56-288. Section 10 of this 1936 Act, now § 56-297 of the 1950 Code, applied to contract carriers as well as to common carriers; but similar provisions with respect to common carriers were in § 6 of chapter 359 of the 1932 Acts when *Turner* v. *Hicks, supra,* was decided. Both in that section 6 and in section 10 of the 1936 Acts revocation of the certificate or permit was permissive, whereas revocation was mandatory under § 33(c) of the 1932 Act.

It thus appears that the remedy at law existing when the injunction was granted in *Turner* v. *Hicks, supra,* was not substantially less adequate and complete than the remedy which exists under the present statutes. As was said of the 1932 Act in that case, there is nothing in the subsequent Acts limiting the jurisdiction of the courts to hear and determine the allegations of the present bill. Chapter 129 of the 1936 Acts was enacted approximately a year after *Turner* v. *Hicks, supra,* was decided and the jurisdiction of equity asserted in that case was not denied in the Act. Courts of equity, having once acquired jurisdiction, do not lose it because jurisdiction of the same matters are given to law courts unless the statute conferring such jurisdiction uses prohibitory or restrictive words. *Buchanan* v. *Buchanan,* 174 Va. 255, 277, 6 S. E. (2d) 612, 621; 1 Barton's Ch. Pr., (2d ed.), pp. 60-1.

The decree sustaining the demurrer and dismissing the bill is reversed and the cause is remanded with direction to reinstate the suit and determine the merits of the allegations of complainant's bill.

*Reversed and remanded.*